(33 Misc. Rep. 128.)

### CARTER v. EIGHTH WARD BANK.

(Supreme Court, Special Term, Kings County. November, 1900.)

1. CONVERSION OF CHECKS AND DRAFTS—COMPLAINT.

A complaint alleging that plaintiff was the owner and entitled to the possession of certain bank checks and drafts; that he never indorsed or transferred them; that they were received by defendant from W. without authority of plaintiff; that the name of plaintiff, purporting to be indorsed on them, is a forgery; that defendant disposed of them, and on such disposition received the sums therein directed to be paid to plaintiff, without plaintiff's authority, knowledge, or consent; that defendant wrongfully and unlawfully disposed of and converted said checks and drafts, and the proceeds collected thereon, to its own use, to plaintiff's damage in a certain sum; that said checks and drafts have not, nor has any part thereof, been paid to plaintiff, though demand on defendant for payment thereof has been made for plaintiff; and then praying for judgment for the said sum alleged as damages,—is for conversion of the checks and drafts, and not for conversion of the money received on them, or for money had and received.

2. SAME.

Though, in an action for conversion of checks and drafts, where it is not alleged that defendant wrongfully took or got possession of them, it is necessary to prove that there was a demand for them before they were disposed of, if defendant disposed of them without knowing that they were plaintiff's such demand may be proved without being pleaded.

3. PLEADING—ANSWER—DEFENSES.

As a defense can consist only of new matter, a denial of an allegation of the complaint has no place therein.

4. CONVERSION—PARTIAL DEFENSE.

It is no defense to action for conversion of checks that they were not received by plaintiff in payment of debts owing him by the drawers or senders, but that such debts remain unsatisfied; this, at most, going to reduce damages to a nominal sum, which is but a "partial defense."

5. SAME—DEMAND.

Defendant's liability for conversion of checks is not affected by plaintiff's delay in making demand, so long as it was while defendant had them in its possession.

6. SAME—RETURN OF PROPERTY.

Allegation of answer to complaint for conversion of checks that they had been returned to and were in plaintiff's possession before commencement of the action is not a defense, the pleading not alleging that defendant returned them.

7. SAME—PARTIAL DEFENSE.

Complaint being for conversion of checks and drafts, a purported defense which by its terms is only in respect of the checks is demurrable, being at most a partial defense.

Action by Charles Carter against the Eighth Ward Bank. Plaintiff demurs to certain defenses. Demurrer sustained.

Charles A. Winter, for plaintiff.
Tunis G. Bergen, for defendant.

GAYNOR, J. The complaint is quite verbose, and therefore difficult to understand. First in order is to see if it states a cause of action, for if it does not, the demurrer to the answer cannot be sustained. Baxter v. McDonnell, 154 N. Y. 432, 48 N. E. 816. Is the complaint for a wrongful conversion, and if so is the alleged conversion of the checks and drafts, or is it of the money received by the defendant on them? Or is it for money had and received? If for the latter, one might well expect to find the simple and scientific allegation which has always been used for a complaint for that cause of action.. Chapman v. Forbes, 123 N. Y. 532, 26 N. E. 3. A scrutiny of the complaint shows that the substance of its allegations is that "the plaintiff was the owner and entitled to the possession of certain bank checks and drafts"; that he never endorsed or transferred them; that they were received by the defendant from one Wilbur without the authority of the plaintiff; that the name of the plaintiff "purporting to be endorsed" on them is a forgery; that the defendant "disposed of the same, and on such disposition received the sums therein directed to be paid to the plaintiff," without the authority, knowledge or consent of the plaintiff; "that the defendant wrongfully and unlawfully disposed of and converted the said checks and drafts and the proceeds collected thereon to its own use, to the damage of the plaintiff in the sum of $2,745.49"; "that said checks and drafts have not, nor has any part thereof, been paid to the plaintiff, although demand upon said defendant for payment thereof has heretofore been made on behalf of the plaintiff"; and then judgment is prayed for the said sum alleged as damages for the wrongful conversion. A schedule of the checks and drafts is annexed to the complaint. There is no allegation as to who forged the plaintiff's name on them as alleged, and none that they were ever in plaintiff's possession, or as to how or from whom Wilbur got them; nor is it stated that Wilbur was in any way connected with either party.

I do not see how the defendant can be called upon to understand such a complaint to be for money had and received to the use of the plaintiff. There is no such allegation. The gist of the complaint is that the plaintiff being the owner of certain specified checks and drafts, they got into the defendant's possession without the plaintiff's authority, and that the "defendant wrongfully and unlawfully disposed of and converted the said checks and drafts and the proceeds collected thereon to its own use, to the damage of the plaintiff in the sum of $2,745.49"; and that "said checks and drafts" have not been paid to the plaintiff, although plaintiff has demanded "payment thereof" of the defendant. The action cannot be for a conversion of the money alleged to have been received by the defendant on disposing of the checks and drafts, for such money could not be the subject of conversion. Farrelly v. Hubbard, 84 Hun, 391, 32 N. Y. Supp. 440. It must therefore be for a conversion of the checks and drafts. Whether that cause can be made out may depend on whether the plaintiff demanded the checks and drafts of the defendant before it disposed of them, if it disposed of them innocently, i. e., without knowing they were the plaintiff's; for there

is no allegation that the defendant wrongfully took or got possession of them. Gillet v. Roberts, 57 N. Y. 28. There is no allegation in the complaint of a demand for them before they were disposed of, but that is not necessary. It suffices that a wrongful conversion is alleged. The demand is not a matter of "pleading" but of "evidence." A wrongful conversion being alleged, it can be made out by proof of a demand and refusal where such demand is necessary to prove the defendant's wrongfulness. The only confusion on the subject is caused by some inadvertent utterances in which the requirement of evidence on this head is discussed as though it were a requirement of pleading; as in Electric Light Co. v. Hazard, 55 Hun, 251, 7 N. Y. Supp. 844. The complaint is therefore sufficient as stating a cause of action for a wrongful conversion of the checks and drafts.

After making a general denial, the answer pleads nine separate defences; or as we sometimes say, "affirmative defences"; but that is only tautological, for every "defence" (i. e., that which is called a "defence" in pleading) can only consist of new affirmative matter, and the burden of proof is on the defendant to affirmatively establish such defence of new matter. Code Civ. Proc. § 500; Cruikshank v. Publishing Co., 32 Misc. Rep. 152, 65 N. Y. Supp. 678, and cases there cited; Durst v. Railroad Co., 67 N. Y. Supp. 297. And each of these defences is demurred to on the ground "that it is insufficient in law upon the face thereof." Code Civ. Proc. § 494.

Before inquiring into the sufficiency of these defences, it seems necessary to refer to the way in which the sufficiency of a defence (i. e., an affirmative defence) has to be tested. I had not supposed a word could be said, much less needed, on the point until my attention was called to an observation in the opinion of Chief Judge Andrews in Douglas v. Insurance Co., 138 N. Y. 209, 33 N. E. 938, 20 L. R. A. 118, and the apparently strange application of it in Wiley v. Village of Rouse's Point, 86 Hun, 495, 33 N. Y. Supp. 773. The remark of the learned chief judge is as follows:

"The allegations of the complaint not denied in the affirmative defence are for the purpose of the question now presented to be deemed admitted. The affirmative defence is to be treated as a separate plea, and the defendant is not entitled to have the benefit of denials made in another part of the answer, unless repeated or incorporated by reference and made a part of the affirmative defence."

I find much difficulty in getting any meaning out of this. What does it mean? An affirmative defence cannot consist of denials at all, and never could. It can by the express words of the Code consist only of "new matter" constituting a defence. First in an answer comes a denial, or denials, if there be any, and then "defences," if there be any (i. e., "affirmative defences," as we sometimes say, as if there could be any other kind). A denial of allegations of the complaint, or of any of them, can have no place in a defence. It would be wholly irrelevant and immaterial there, and on demurrer to the defence for insufficiency would have to be disregarded, for an answer, reply or demurrer to a complaint, answer

or defence, as is well understood, raises no issue on immaterial or irrelevant allegations, but only on the material and relevant allegations. A demurrer to a defence is tested solely by whether there is "new matter" therein which constitutes a defence. If there be anything there which is not "new matter," it has no weight whatever. What then can be meant by saying that in considering a demurrer to a defence "the defendant is not entitled to have the benefit of denials made in another part of the answer," unless they be "repeated or incorporated" in such defence? Such denials if repeated or incorporated in an affirmative defence could not be considered at all on the question of the sufficiency of such defence of new matter. They would be wholly immaterial and irrelevant there, and would be struck out on motion, if the plaintiff chose to make such motion, though that would be unnecessary.

Nothing can be better understood among us than that when a defence is demurred to its sufficiency has to be determined on the assumption that the complaint is true. If denials of allegations of the complaint could be a material and relevant part of a defence, and had to be considered there, it is obvious that the pleader could always prevent a defence from being demurred to by incorporating denials in it. Suffice it to say that what the Code calls, a "defence" in pleading, and which we sometimes call an affirmative defence, can, by the express words of the Code, consist only of new matter constituting a defence, i. e., new matter which, assuming the complaint to be true, constitutes a defence to it; from which it is obvious that a denial or denials of the complaint can be no part of such defence. If such a denial or denials could be a material and relevant part thereof, a defence would no longer be a defence and demurrable for insufficiency.

Each of these defences must therefore be tested as to its sufficiency by asking whether if all of the material allegations of the complaint be taken as true, the matter pleaded in such defence is nevertheless a defence to the cause of action alleged.

The first defence is that the said checks were not received by the plaintiff in payment of debts owing to him by the drawers or senders, and that such debts remain unsatisfied. This is obviously no defence. It does not defeat the cause of action for a wrongful conversion. At most it could only be claimed to go in mitigation of damages, i. e., to reduce damages to a nominal sum. That would make it not a "defence," but a "partial defence"; and it suffices to say that it has not been pleaded as such. Code Civ. Proc. § 508. The meaning of the second defence is difficult to make out, but it seems to be that the said checks were received by the plaintiff "through or by means of his agent or agents," and became his property, and the amounts thereof were received by him "or his agent or agents," and credited by the plaintiff on his books of account. If this be so the defendant did not convert the checks and drafts, and hence this is not new matter, but is clearly embraced within the general issue, i. e., the issue made by the general denial in the answer. The third defence is that the amounts of the said checks were "credited on the books and accounts of the plain-

tiff in due order of business by him or his agent or agents," and that therefore the plaintiff "is estopped from denying that he has received" the same. This is too frivolous for discussion. The fourth is a repetition that the said amounts were so credited on the plaintiff's books to the said drawers or senders, and that the plaintiff "was guilty of gross negligence" in not examining his books and discovering their condition in a reasonable time after receipt of the checks, and notifying the defendant. I am unable to see any meaning at all in this. It does not matter when the plaintiff gave the defendant notice of the forgery, and made his demand upon it for the checks and drafts, provided it still had them in its possession; nor does it matter when he did it if the defendant had already innocently parted with them, i. e., without knowing of the forgery. The fifth is that the said checks were received by the plaintiff's agent or agents under their agency in the regular course of the plaintiff's business, and that the said agents "or one Wilbur" had the right by reason of "their employment" by the plaintiff "to receive and dispose of said checks and account therefor to the plaintiff." It is not alleged that they did dispose of them and account, nor do I perceive what the pleader means at all. Surely not that these facts justified the defendant in unlawfully converting the said checks and drafts to its own use. The sixth is that the checks were received by the plaintiff in payment of merchandise sold by him to various persons, and were "duly accounted for by the plaintiff upon his books in favor of such persons or otherwise, and the plaintiff has received the benefit of the proceeds." What this means, or how it is a defence, is not suggested. The seventh is that "the said checks have been returned to and were in the possession of the plaintiff before the commencement of this action." This is no plea that the defendant returned the checks. The eighth is that the said checks were not drawn on the defendant, but were received by it in the course of its banking business, and that the plaintiff never notified the defendant that he had not endorsed them until from 3 to 17 months afterwards, which was negligence which defeats his action. If the defendant received the checks and drafts not tortiously, but innocently, the plaintiff may prove a demand by him upon it for them before it innocently parted with possession of them in order to make out his cause of action. This demand would have to disclose that the endorsement was a forgery. This so-called defence therefore is all embraced within the general issue raised by the general denial of the answer. If such demand was not made until 17 months had elapsed, it was still good if the defendant still had possession of the checks and drafts; and no matter when it was made it was of no use if the defendant had already parted with them. The ninth defence states the same facts as the eighth. Finally, it must be noted that each of the said pleaded defences is by its terms only in respect of the bank checks, and not in respect of the drafts, and therefore could be effectually pleaded only as a partial defence, if available at all.

    The demurrer is sustained.